UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RITA CODERRE, et al., | No. 2:21-cv-00965-TLN-DMC |
| Plaintiffs, | |
| v. | **ORDER** |
| ROBERT BURTON, et al., | |
| Defendants. | |

This matter is before the Court on Defendants M. Moreno, J. Walters, X. Lor, J. Duran, J. Sloan, and V. Xiong's (collectively, "Defendants") Motion to Dismiss.[1] (ECF No. 37.) Plaintiff Rita Coderre ("Plaintiff") filed an opposition. (ECF No. 39.) Defendants filed a reply. (ECF No. 41.) For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' motion.

///
///
///
///
///

---

[1] Defendants Shereef Aref and Robert Burton filed an answer (ECF No. 27) and did not join in the instant motion to dismiss.

1

### I. FACTUAL AND PROCEDURAL BACKGROUND

On May 31, 2020, inmate Aaron Coderre was found unresponsive in the showers at California Health Care Facility in Stockton, California. (ECF No. 23 at ¶ 22.) Joshua Rudiger ("Rudiger"), another inmate, had stabbed Aaron Coderre in the neck, killing him. (*Id*. at ¶ 25.) Plaintiff is Aaron Coderre's mother and successor in interest and sues on behalf of herself and her deceased son. (*Id*. at ¶¶ 5, 87.) Defendants were correctional officers at the facility. (*Id.* at ¶ 9.) During an interview that took place the day before the attack, the decedent told Moreno that Rudiger threatened him and other inmates with violence and threats to suck their blood. (*Id.* at ¶ 58.) The decedent asked Moreno to be moved to a mental health crisis bed for his safety. (*Id.*) Moreno denied the request. (*Id.*) On the day of the attack, Walters was assigned to monitor video feeds showing the location where the attack occurred and allowed Rudiger to enter the decedent's single-person shower by failing to monitor the surveillance. (*Id.* at ¶¶ 35, 37, 69.) Lor, Duran, Sloan, and Xiong were assigned as floor officers who monitored and controlled the movements of inmates on the floor where the attack occurred, including access to the showers. (*Id.* at ¶ 38.)

Plaintiff initiated this action on May 28, 2021. (ECF No. 1.) On September 6, 2023, Plaintiff filed the operative Second Amended Complaint ("SAC"), alleging: (1) a 42 U.S.C. § 1983 claim ("§ 1983") for failure to protect in violation of the Eighth Amendment against Walters, Moreno, Lor, Duran, Sloan, and Xiong; (2) a § 1983 claim for supervisory liability against Burton, Aref, Walters, and Moreno; (3) a claim for violation of California Government Code § 845.6 against Walters, Moreno, Lor, Sloan, and Xiong; and (4) negligence/wrongful death against Walters, Moreno, Lor, Sloan, Xiong, Burton, and Aref. (ECF No. 23.) Defendants filed the instant motion to dismiss on October 26, 2023. (ECF No. 37.)

### II. STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in

federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss" for failure to state a claim. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

1  experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or

2  her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly

3  dismissed. *Id.* at 680 (internal quotations omitted).

4  If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

5  amend even if no request to amend the pleading was made, unless it determines that the pleading

6  could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

7  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995));

8  *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

9  denying leave to amend when amendment would be futile).

10 **III.  ANALYSIS**

11 A.  Claim One

12 In Claim One, Plaintiff alleges Defendants failed to protect the decedent in violation of the

13 Eighth Amendment.  (ECF No. 23 at 23.)  Defendants argue the Court should dismiss Claim One

14 as to Walters, Lor, Duran, Sloan, and Xiong because Plaintiff fails to allege those Defendants

15 knew Rudiger posed a substantial risk of serious harm to the decedent.[2]  (ECF No. 37-1 at 17.)

16 "The Eighth Amendment requires prison officials to protect inmates from violence." *Wilk*

17 *v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 833

18 (1994)).  "It is not, however, every injury suffered by one prisoner at the hands of another that

19 translates into constitutional liability for prison officials responsible for the victim's safety."

20 *Farmer*, 511 U.S. at 834.  "Specifically, a prison official violates an inmate's Eighth Amendment

21 right only if that official is 'deliberately indifferent' — in other words, if the official is

22 subjectively aware of a substantial risk of serious harm to an inmate and disregards that risk by

23 failing to respond reasonably." *Wilk*, 956 F.3d at 1147.

24 In the SAC, Plaintiff alleges Rudiger was known in the facility as the "Modern Day

25 Vampire."  (ECF No. 23 at ¶ 31.)  Plaintiff further alleges Defendants knew of Rudiger's violent

26 history and continued proclivity for slashing the throats of others and drinking their blood. (*Id.* at

---

[2]  Defendants do not move to dismiss Claim One as alleged against Moreno, the correctional officer who interviewed the decedent the day before his death about Rudiger's threats.

4

¶¶ 31, 32.) Plaintiff alleges Defendants also knew Rudiger would pose a substantial risk of harm if placed in close contact with another inmate. (*Id.* at ¶ 32.) Plaintiff specifically alleges the decedent requested Defendants protect him from Rudiger and reported to Defendants that Rudiger threatened him. (*Id.* at ¶¶ 89, 90.)

Although Defendants argue the allegations in the SAC are too conclusory to show Defendants' subjective knowledge of the threat Rudiger posed to the decedent, the Court notes that none of the cases Defendants cite in support of dismissing Claim One were decided on a Rule 12(b)(6) motion. (*See* ECF No 37-1 at 16–20.) In ruling on a Rule 12(b)(6) motion, the Court must take the factual allegations in the SAC as true and draw all reasonable inferences in Plaintiff's favor. Applying that standard, the Court finds the SAC sufficiently alleges Defendants subjectively knew Rudiger posed a substantial risk of serious harm based on Plaintiff's allegations that Defendants knew of Rudiger's violent tendencies and threats made to the decedent. *See Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

Accordingly, the Court DENIES Defendants' motion to dismiss Claim One.

B.   Claim Two

In Claim Two, Plaintiff alleges Walters and Moreno are liable under § 1983 as supervisors. (ECF No. 23 at 29.) Defendants argue the Court should dismiss Claim Two because Plaintiff fails to allege Walters and Moreno acted as policymakers or failed to train or supervise subordinate correctional officers. (ECF No. 37-1 at 20–22.)

To establish supervisory liability under § 1983, there must exist either "(1) [the official's] personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Rodriguez v. City of L.A.*, 891 F.3d 776, 798 (9th Cir. 2018) (citation omitted). "The causal connection is established 'by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Id.* (citation omitted). A supervisor can be liable "for his own

culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal alteration and quotation marks omitted).

In the instant case, the Court finds the SAC adequately alleges Walters and Moreno were personally involved in the constitutional deprivation as supervisors. As to Walters, the SAC alleges Walters was assigned to monitor the video feeds from the cameras located inside the unit on the day of the incident. (ECF No. 23 at ¶ 35.) The SAC alleges the video feed showed Rudiger engaging in suspicious activity that should have triggered intervention, such as Rudiger entering the single-cell shower occupied by the decedent and placing a towel over the window of the shower. (*Id.* at ¶¶ 37, 64.) As to Moreno, the SAC alleges Moreno interviewed the decedent the day before the incident regarding the facts and circumstances of alleged deadly threats made to him by Rudiger. (*Id.* at ¶ 58.) The decedent allegedly told Moreno that Rudiger threatened him and other inmates with violence and threatened to suck their blood. (*Id.*) The decedent also asked Moreno to move him to a mental health crisis bed for his safety, but Moreno denied the request. (*Id.*)

The Court concludes the foregoing allegations support a plausible claim that Walters and Moreno knew Rudiger posed a substantial risk of serious harm to the decedent and disregarded that risk by failing to take any action to protect the decedent. *See Starr v. Baca*, 652 F.3d 1202, 1206–07 (9th Cir. 2011) ("A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement — and the liability — of that supervisor.").

Therefore, the Court DENIES Defendants' motion to dismiss Claim Two.

        C.     Claim Three

In Claim Three, Plaintiff alleges Defendants failed to summon medical care in violation of California Government Code § 845.6. (ECF No. 23 at 33.) Defendants argue the Court should dismiss Claim Three because there are no allegations the decedent was alive when he was found or that any of Defendants knew the decedent needed immediate medical care. (ECF No. 37-1 at

23.) Plaintiff concedes Claim Three should be dismissed and does not request leave to amend. (ECF No. 39 at 17.)

Accordingly, the Court DISMISSES Claim Three without leave to amend.

### D.     Claim Four

In Claim Four, Plaintiff alleges Defendants are liable for negligence/wrongful death. (ECF No. 23 at 35.) Like their argument as to Claim One, Defendants argue the Court should dismiss Claim Four against Walters, Lor, Xiong, and Sloan because the SAC does not sufficiently allege Defendants knew of the substantial risk of serious harm Rudiger posed to the decedent. (ECF No. 37-1 at 25.) Defendants also argue Moreno and Walters cannot be liable solely based on their status as supervisors pursuant to California Government Code § 820.8 ("§ 820.8"). (*Id.* at 26.) Lastly, Defendants argue Plaintiff cannot obtain punitive damages for the wrongful death claim because Defendants were not convicted of homicide in relation to decedent's death and Plaintiff is not entitled for attorney's fees for state law claims. (*Id.*)

As to Defendants' first argument, for the reasons already discussed in the context of Claim One, Plaintiff alleges sufficient facts to support at the very least a reasonable inference that Defendants knew Rudiger posed a threat to the decedent. As to Defendants' second argument, as discussed, Plaintiff alleges sufficient facts to establish Moreno and Walters are liable for their own involvement in the constitutional deprivation, not for the acts or omission of others. Therefore, § 820.8 does not apply. *See* Cal. Gov't Code § 820.8 ("[A] public employee is not liable for an injury caused by the act or omission of another person. Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission."). For these reasons, the Court DENIES Defendants' motion to dismiss Claim Four. However, Plaintiff fails to respond to Defendants' remaining arguments about Plaintiff's inability to obtain punitive damages or attorney's fees for this claim. Accordingly, the Court deems those requests abandoned and GRANTS Defendants' motion to dismiss as to punitive damages and attorney's fees for Claim Four without leave to amend.

///

///

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss (ECF No. 37) as follows:

1. The Court GRANTS Defendants' motion to dismiss Claim Three without leave to amend;
2. The Court GRANTS Defendants' motion to dismiss Plaintiff's request for punitive damages and attorney's fees as to Claim Four without leave to amend; and
3. The Court DENIES Defendants' motion in all other respects.

Defendants Moreno, Walters, Lor, Duran, Sloan, and Xiong shall file an answer not later than twenty-one (21) days from the electronic filing date of this Order.

IT IS SO ORDERED.

Date: August 23, 2024

_____
Troy L. Nunley
United States District Judge